**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Greenwich Investment Management Incorporated, | No. CV-22-00129-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Aegis Capital Corporation, *et al.*, | |
| Defendants. | |

At issue is Defendants Aegis Capital Corp. and Municipal Capital Markets Group Inc.'s Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 83, MTD; Doc. 90 (filed under seal)).[1] Plaintiff Greenwich Investment Management Inc. filed a Response opposing the Motion (Doc. 109, Resp.), and Defendants filed a Reply (Doc. 120, Reply). The Court requested supplemental briefing from the parties (Doc. 134), which the parties timely filed (Docs. 138, 140). The Court resolves the Motion to Dismiss without oral argument. LRCiv 7.2(f). In this Order, the Court will also address the Stipulation for Leave to File Certain Portions of Defendants' Supplemental Brief in Support of Their Rule 12(b)(1) Motion to Dismiss under Seal (Doc. 135) and Defendants' Motion to Seal Mistakenly Filed Unredacted Supplemental Brief (Doc. 139).

---

[1] The Court does not refer to any confidential information in this Order, and the Order thus remains unredacted and unsealed.

1  I.      BACKGROUND

2          In the Complaint (Doc. 1, Compl.), Plaintiff alleges the following. In 2019, Plaintiff

3  purchased from Defendants two series of municipal bonds issued by the Arizona Industrial

4  Authority for $22,040,000. (Compl. ¶¶ 1–3.) Plaintiff initially did not purchase the bonds

5  for itself, but rather on behalf of its clients as their investment adviser.[2] (*See* MTD at 12;

6  Resp. at 1; Doc. 111-1, Rieger Decl. ¶ 3.) The bonds were meant to fund the operations of

7  Harvest Gold Silica, Inc. ("HGS"), which is in the business of remediating mine solid waste

8  into silica-based products. (Compl. ¶ 4.) HGS works alongside a second company, Vast

9  Mountain Development, Inc. ("VMD"), which manages the operations on HGS's work site

10 in Congress, Arizona. (Compl. ¶ 4.) Additionally, HGS leases the land upon which its work

11 site is built from VMD. (Compl. ¶ 4.) The bonds were to be repaid from the revenues

12 generated by HGS's operations. (Compl. ¶ 5.)

13         Defendants underwrote the bonds and published several documents meant to induce

14 Plaintiff's purchase. (Compl. ¶ 3.) Through those publications, Defendants provided

15 Plaintiff with facts upon which to make an investment decision. (Compl. ¶ 6.) Plaintiff

16 alleges that those facts were variously untrue and misleadingly incomplete. (*E.g.,* Compl.

17 ¶ 7.) For example, Defendants failed to disclose that HGS and VMD had overlapping

18 management and ownership; the site was not operational because HGS and VMD had

19 failed to secure necessary permits; the product produced by HGS and VMD was different

20 in nature and less valuable than originally represented; HGS and VMD had operated prior

21 to the bond issuance and had performed poorly financially; and VMD and its principals

22 had previously committed securities violations. (*E.g.,* Compl. ¶ 7.) Plaintiff claims that,

23 had it not been misled by Defendants, it would not have purchased the bonds. (Compl. ¶ 9.)

24         Plaintiff's investment on behalf of its clients turned out to be a bad one, as HGS has

25 not been financially successful. (Compl. ¶¶ 90, 91.) Through February 28, 2021, it

26 generated only about $430,000 in revenue where, by contrast, Defendants had projected

27

28 _____

[2] While the Court employs the spelling "adviser" in lieu of "advisor" because the laws that govern financial investment use the former spelling, the Court recognizes that much of the case law employs the spelling "advisor."

over $84 million in revenue. (Compl. ¶ 91.) Similarly, HGS suffered a loss of over $6 million, while Defendants had projected net profits of over $17 million. (Compl. ¶ 91.) On November 7, 2020, UMB Bank, N.A., the trustee for the bonds, found HGS to be insolvent. (Compl. ¶¶ 25, 116, 118.)

In its supplemental brief (Doc. 138), Plaintiff shows that, in June 2021—after HGS was declared insolvent and a few months before Plaintiff filed the first complaint related to this suit—Plaintiff purchased a $5,000 Series 2019B bond and a $5,000 Series 2019A bond on the secondary market for its own account. As a result, Plaintiff contends in its supplemental brief (Doc. 138) that its allegation that it "purchased all of the bonds" at the initial issuance, "some for its own account and some for its clients," has a factual basis, even if Plaintiff's purchase of those two bonds was not at the initial issuance but rather two years later in the secondary market. (Compl. ¶ 32.)

In October 2021, Plaintiff first brought a lawsuit against HGS, VMS, the Defendants in the present lawsuit, and others, but voluntarily dismissed that suit in January 2022. (Case No. CV-21-01794-PHX-SMM.) A few days later in January 2022, Plaintiff brought this suit against only the underwriters, Aegis Capital Corp. and Municipal Capital Markets Group Inc., alleging violations of the Arizona Securities Act at A.R.S. §§ 44-1991 and 44-1998, the Connecticut Securities Act, and the Texas Securities Act, as well as raising claims of fraud and negligent misrepresentation. (Compl. ¶¶ 124–57.)

District Judge Michael T. Liburdi initially presided over this matter, and he set a fact discovery deadline of March 1, 2023 (later extended to June 30, 2023), an expert discovery deadline of June 30, 2023 (later extended to November 2, 2023), and a dispositive motion deadline of July 28, 2023 (later extended to January 10, 2024). (Docs. 29, 61.) On June 12, 2023, near the end of the fact discovery period, Defendants filed the present Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing Plaintiff lacks standing based on the fact that it produced no evidence in discovery showing

1  it had legal title or any proprietary interest in the bonds forming the basis of its claims

2  against Defendants.[3] (Doc. 83.)

3      After Defendants filed the present Motion to Dismiss, Judge Liburdi further

4  extended the case management deadlines on the parties' request, Plaintiff's counsel

5  withdrew and Plaintiff retained new counsel, and the case was transferred to the

6  undersigned, who granted further requests by the parties to extend the case management

7  deadlines. (Docs. 96, 125–29.) As of the date of this Order, the fact discovery deadline is

8  July 29, 2024, the expert discovery deadline is October 28, 2024, and the dispositive

9  motion deadline is November 29, 2024. (Doc. 129.)

10  **II.    LEGAL STANDARD**

11      Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over

12  which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1)

13  challenge may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

14  When a defendant argues that the claims in the complaint, even if true, are insufficient to

15  establish subject matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v.*

16  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject matter

17  jurisdiction under Rule 12(b)(1), courts must accept all material, non-conclusory

18  allegations in the complaint as true and construe the complaint in favor of the plaintiff.

19  *White*, 227 F.3d at 1242; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "By

20  contrast, in a factual attack [to subject matter jurisdiction], the challenger disputes the truth

21  of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe*

22  *Air for Everyone*, 373 F.3d at 1039. Courts may look beyond the complaint only when a

23  defendant brings a factual attack against jurisdiction. *White*, 227 F.3d at 1242. In that

24  instance, the court "also need not presume the truthfulness of the plaintiff['s] allegations."

25  *Id.*

26

27      _____

28      [3] In their supplemental brief, Defendants contend that Plaintiff knowingly misrepresented in the Complaint that it purchased bonds for itself at the initial issuance, and Plaintiff "perpetrated this lie for months during the discovery process," producing deficient and redacted responses to Defendants' discovery requests. (Doc. 140 at 1–2.)

- 4 -

When evaluating a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing the elements of Article III standing. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Here, Defendants' challenge is almost entirely facial. Except for one fact, Defendants argue that Plaintiff lacks standing under the allegations it has pled, even if those allegations are taken as true. The exception is Defendants' challenge to Plaintiff's allegation that it purchased some of the bonds for itself at the initial issuance—a fact that, as explained below, would confer standing upon Plaintiff if true. (MTD at 12.) Accordingly, the Court takes all of Plaintiff's allegations as true, absent the allegation that Plaintiff purchased some of the bonds for itself at the initial issuance.

## III.   ANALYSIS

### A.   Standing

Defendants urge the Court to dismiss Plaintiff's claims due to the Court's lack of subject matter jurisdiction. (MTD at 1.) Specifically, Defendants argue that Plaintiff does not have standing to pursue its claims. (MTD at 1.) To support this argument, Defendants rely upon *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008). There, the Second Circuit Court of Appeals, interpreting *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008), held that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 108. Plaintiff contends that Defendants' reliance upon *Huff* is misplaced and that it does have standing. (Resp. at 2.)

Article III authorizes federal courts to resolve only "cases" and "controversies." U.S. Const. art. III, § 2. This constitutional limitation on federal jurisdiction is today enforced through various justiciability doctrines, including the doctrine of standing. Article

- 5 -

III standing consists of three components. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction must establish that:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

Here, Defendants urge the Court to adopt the *Huff* court's reasoning, and they contend that Plaintiff lacks standing because it has not suffered an injury-in-fact. (MTD at 6–12.) In *Huff*, the court dealt with the fallout of Adelphia Communications Corp.'s financial collapse. 549 F.3d at 103–04. Investors in Adelphia suffered significant losses, and among those investors were the plaintiff's clients, to whom the plaintiff served as an investment adviser. *Id.* The plaintiff sued on behalf of its clients, and the defendants moved to dismiss, arguing that the plaintiff lacked standing. *Id.* at 104.

At the outset, the Huff court noted that the defendant had launched a challenge to the plaintiff's constitutional standing, not its statutory standing. It stressed that the requirements for statutory standing, where applicable, are "separate and apart from the elements of constitutional standing [set forth in Friends of the Earth] and cannot be used to avoid constitutional requirements." Id. at 106. Put another way, the test used to evaluate statutory standing under the Private Securities Litigation Reform Act, which the defendant desired to apply, is distinct from that used to evaluate constitutional standing. Id. Accordingly, the court evaluated whether the plaintiff had suffered an injury-in-fact fairly traceable to the alleged actions of the defendant and redressable by the court. Id. at 106–07.

The *Huff* court found that the plaintiff had not suffered an injury-in-fact and therefore did not have standing. *Id.* at 111. The plaintiff did not allege that it had personally suffered injury, but rather that its clients had suffered injury. *Id.* at 107. Although the

plaintiff argued that it possessed standing to sue on its clients' behalf because it acted as their attorney-in-fact with authority to make investment decisions on their behalf, the court disagreed, relying on the Supreme Court's holding in *Sprint*. *Id.* at 108–10.

In *Sprint*, the Supreme Court considered whether a group of aggregators who had taken assignments from approximately 1,400 payphone operators had authority to sue on their behalf. 554 U.S. at 272–73. Because the operators had assigned their claims to the aggregators, the Court found that the aggregators had suffered an injury-in-fact. *Id.* at 286. The Court emphasized the difference that such an assignment makes: "There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer . . . The latter confers a property right (which creditors might attach); the former does not." *Id.* at 289. The *Huff* court interpreted *Sprint* to mean that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." 549 F.3d at 108. Because the plaintiff had neither, it did not have standing. *Id.* at 109.

Defendants note that district courts within the Ninth Circuit have adopted and applied the *Huff* court's reasoning. (MTD at 8.) For example, in *Jones v. Bank of America NA*, No. CV-17-08231-PCT-SMB, 2019 WL 3017612, at *2 (D. Ariz. July 10, 2019), the Court applied *Huff* and dismissed a claim because the plaintiff did not have a proprietary interest in his claims, but only possessed a power of attorney. Similarly, in *Oaktree Capital Management, L.P. v. KPMG*, 963 F. Supp. 2d 1064 (D. Nev. 2013), the District of Nevada recognized the trend of acceptance of *Huff* within the Ninth Circuit and applied its reasoning to dismiss the plaintiffs because they did not have a proprietary interest in their claims. *Id.* at 1078–79 (collecting cases). And in *Northstar Financial Advisors, Inc. v. Schwab Investors*, 609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir. 2010), the Northern District of California adopted the *Huff* court's reasoning and dismissed the plaintiff because it could not "bring claims on behalf of its clients simply by virtue of its status as an investment advisor." *Id.* at 942.

Plaintiff argues the issue is not settled and there is a split of authority as to whether an investment adviser must have legal title to, or a proprietary interest in, its claim to sue on behalf of its clients. (Resp. at 4.) Plaintiff relies on *Employers-Teamsters Local Numbers 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920 (9th Cir. 2007), which noted that "other courts have found that an investment advisor has an interest in its own right to receive full and fair disclosures regarding the true value of a company's stock, and therefore is a 'purchaser' under the [Private Securities Litigation Reform Act] with proper standing to pursue litigation on behalf of its individual clients." *Id.* at 922 n.1. Additionally, Plaintiff cites cases from district courts in California, Texas, New York, New Jersey, Massachusetts, Delaware, Florida, Missouri, Ohio, and Pennsylvania ostensibly holding that investment advisers "have standing to sue on behalf of their clients without obtaining formal assignments of claims." (Resp. at 5.)

But none of the cases relied upon by Plaintiff demonstrate the split of authority for which it cites them. While Defendants challenge Plaintiff's constitutional standing, the cases cited by Plaintiff address challenges to statutory standing under federal securities laws. As the *Huff* court itself pointed out, challenges to constitutional and statutory standing are not the same. 549 F.3d at 106. Plaintiff brings no claim under federal securities laws, and Defendants do not challenge any aspect of Plaintiff's statutory standing. (*See generally* MTD, Reply.) Plaintiff's cited authority is thus inapposite to the issue before the Court.

Like other courts in the Ninth Circuit, in this context, the Court finds persuasive the *Huff* court's reasoning and its interpretation of *Sprint*. Accordingly, the Court holds that to have an injury-in-fact, Plaintiff must have legal title to, or a proprietary interest in, the claims asserted. It is not enough that Plaintiff is the attorney-in-fact for its clients and has discretionary authority to make investments on their behalf.

In the Complaint, Plaintiff alleged that it "purchased all of the [b]onds, some for its own account and some for its clients" and thus alleged it suffered an injury-in-fact. (Compl. ¶ 32.) But Defendants, making a factual attack, point to evidence refuting Plaintiff's allegation that it purchased any of the bonds for itself at the initial issuance. (MTD at 12.)

Specifically, Defendants note that "the trade blotter [produced by Plaintiff] does not identify even one Initial Buy as Plaintiff-specific, and the Initial Buys add up to the total issuance of the bonds." (MTD at 12 (cleaned up).) Plaintiff appeared to concede the point, stating that it purchased the full bond amount "on its clients' behalf." (Resp. at 1.) Indeed, in the Response, Plaintiff made no reference to any bonds purchased for itself. (*See generally* Resp.) Moreover, Plaintiff's Chairman swore under penalty of perjury that all the bonds were initially purchased for Plaintiff's clients. (Rieger Decl. ¶ 3.)

As the Court noted *supra*, in the supplemental brief requested by the Court, Plaintiff contends that its allegation in the Complaint that it purchased some bonds for its own account and some bonds for its clients was technically not incorrect because Plaintiff purchased two $5,000 bonds (of the $22 million sold) for its own account. (Doc. 138.) But Plaintiff purchased those two bonds on the secondary market, two years after the initial issuance and after UMB Bank had declared HGS to be insolvent. Plaintiff concedes that its claims against Defendants based on purchases Plaintiff made for its clients relying on alleged misrepresentations leading up to the initial issuance cannot also be premised on the two bonds Plaintiff purchased for its own account on the secondary market two years later. (Doc. 138 at 4 (Plaintiff "has never relied on its minimal purchases of the Bonds to confer standing on [Plaintiff] to prosecute claims on behalf of its clients").)

The Complaint otherwise fails to allege injury to Plaintiff, only to Plaintiff's clients. The Complaint also does not include any allegation that Plaintiff's clients have assigned their claims to Plaintiff. In its Response, Plaintiff informed the Court that it has since obtained 181 assignments from its bond-buying clients and, as such, Plaintiff requests leave to amend the Complaint (Resp. at 2–3) —a subject the Court will address *infra*. But these recent assignments do not affect the Court's analysis of whether Plaintiff's Complaint establishes constitutional standing. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036,1043–48 (9th Cir. 2015) ("*Northstar II*"). Because Plaintiff has not pled facts sufficient to demonstrate legal title to, or a proprietary interest in, the claims brought, Plaintiff has not pled an injury-in-fact and does not have standing to pursue its claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.      Leave to Supplement

For the reasons articulated *infra*, the Court will treat Plaintiff's request for leave to amend under Federal Rule of Civil Procedure 15(a) to add allegations regarding the assignments of claims from its clients as a request to file a supplemental pleading under Rule 15(d). Rule 15(d) provides,

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Rule 15(d) "is intended to give district courts broad discretion in allowing supplemental pleadings." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). It "permits a supplemental pleading to correct a defective complaint and circumvents 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief.'" *Northstar II*, 779 F.3d at 1044 (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1505 (3d ed. 1998)).

Defendants contend that the Court should not grant Plaintiff leave to amend or supplement for several reasons. First, Defendants argue that Plaintiff cannot establish standing after the fact by amending its Complaint because "subject matter jurisdiction 'depends on the state of things at the time the action was brought.'" (Reply at 8 (quoting *Keene v. United States*, 508 U.S. 200, 207 (1993).) While technically correct, Defendants' argument is incomplete. Plaintiff may not cure the jurisdictional defect by amending its Complaint to assert more facts. *See Northstar II*, 779 F.3d at 1046; *In re Schugg*, 688 F. App'x 477, 479 (9th Cir. 2017); *Strudley v. Santa Cruz Cnty. Bank*, No. 5:15-CV-05106-EJD, 2017 WL 4355129, at *2 (N.D. Cal. Sept. 19, 2017). But, in *Northstar II*, the Ninth Circuit stated that a plaintiff may file a supplemental pleading alleging new facts (based on events occurring after the complaint was filed) and thereby cure the jurisdictional deficiency. 779 F.3d at 1044. There, the plaintiff received an assignment of claim several

months after the original complaint was filed.[4] *Id.* at 1043. The district court dismissed the original complaint with a suggestion that the jurisdictional defect could be cured by filing an amended complaint. *Id.* The plaintiff followed the suggestion and filed an amended complaint that alleged the assignment of claim. *Id.* The case was reassigned, and the defendant renewed its motion to dismiss. *Id.* The district court recognized that an amended complaint was not the proper avenue for curing the jurisdictional defect, but nonetheless denied the motion to dismiss, treating "the prior order as granting [the] plaintiff leave to file a supplemental pleading under Rule 15(d) instead of an amended complaint pursuant to Rule 15(a)." *Id.* at 1044. The Ninth Circuit affirmed the decision, agreeing that the district court properly treated the filing as a supplemental pleading, which it held could cure a jurisdictional defect. *Id.* at 1044–48.

Defendants next argue that, even if the above is true, it is a moot point because Plaintiff did not request leave to file a supplemental pleading; it requested leave to amend its Complaint. (Reply at 9.) But in *Northstar II*, the Ninth Circuit discouraged such strict adherence to form in disregard of substance. *Id.* at 1043–48. It affirmed the district court's decision to reinterpret the plaintiff's amended complaint as a supplemental pleading. *Id.* at 1048. Thus, the Court may, and indeed will, similarly treat Plaintiff's request to file an amended complaint as a request to file a supplemental pleading.

Third, Defendants contend that "even if the Court allows Plaintiff to amend, Plaintiff has failed to comply with LRCiv 15.1(a) which requires Plaintiff to attach a copy of the proposed amendment." (Reply at 10.) But LRCiv 15.1(a) applies to *motions* to amend or supplement pleadings. Plaintiff filed no such motion here. Instead, Plaintiff merely requests that it be given an opportunity to amend its Complaint if the Court grants Defendants' Motion to Dismiss. (Resp. at 15–17.) This is a significant difference because when a party, such as Plaintiff, requests leave to amend or supplement following the

---

[4] Similar to the present case, the *Northstar* plaintiff, an investment adviser, obtained an assignment of claim from its investor-client for the purpose of showing an injury-in-fact based on the Second Circuit decision in *Huff*, which the Ninth Circuit acknowledges in its opinion. 779 F.3d at 1043.

1   Court's ruling, that party cannot say with certainty how it will amend or supplement until
2   the Court's ruling is revealed. LRCiv 15.1(a) is therefore inapplicable in this instance.

3          Finally, Defendants argue that even if "Plaintiff had requested the right relief to
4   remedy its defective pleading, the Court should nevertheless deny leave." (Reply at 10-11.)
5   Specifically, Defendants state that they "would be prejudiced by the filing of a
6   supplemental pleading at this stage" because, among other things, "[a] supplemental
7   pleading . . . would allow Plaintiff to substantially change the nature of its case at the end
8   of fact discovery." (Reply at 11.)

9          "Generally, the standard used by district courts in deciding whether to grant or
10  deny . . . leave to supplement is the same standard used in deciding whether to grant or
11  deny . . . leave to amend a complaint or answer." *Womack v. GEO Grp., Inc.*, No. 12-CV-
12  1524-PHX-SRB (LOA), 2013 WL 491979, at *5 (D. Ariz. Feb. 8, 2013). Rule 15 gives the
13  Court broad discretion in deciding a motion to amend or supplement a pleading, and that
14  discretion includes considering any undue delay, repeated failure to cure deficiencies, bad
15  faith, or dilatory motive on the part of Plaintiff as well as undue prejudice to Defendants.
16  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Zucco Partners, LLC v. Digimarc Corp.*,
17  552 F.3d 981, 1007 (9th Cir. 2009), as amended (Feb. 10, 2009). "[I]t is the consideration
18  of prejudice to the opposing party that carries the greatest weight," and "absent prejudice
19  or a strong showing of any of the remaining *Foman* factors, there exists a presumption
20  under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon,*
21  *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

22         The Court requested that Defendants file a supplemental brief addressing the
23  prejudice they would suffer and the other *Foman* factors if the Court allows Plaintiff to
24  supplement the Complaint at this late stage of the litigation. (Doc. 134.) In their
25  supplemental brief, Defendants contend that Plaintiff engaged in bad faith and dilatory
26  tactics by misrepresenting its legal title to or interest in the bonds in the Complaint,
27  resulting in a Complaint that is "deficient as a matter of law"; Plaintiff "took steps to
28  attempt to secure authority from its clients to pursue this suit on their behalf only after

learning of the Motion to Dismiss, despite being on notice well before then of what *Huff* required"; and Plaintiff "obstructed Defendants' efforts to obtain . . . routine discovery" by, for example, only producing "an unredacted version of the trade blotter (which again confirmed Plaintiff did not purchase any bonds for itself) upon threat of a motion to compel." (Doc. 140 at 2–3.) Defendants argue that the result of Plaintiff's dilatory tactics has been obstruction, delay, and depletion of Defendants' resources—"the paradigm example of bad faith." (Doc. 140 at 4.)

As for prejudice, Defendants state that they are "highly skeptical of Plaintiff's late attempts at obtaining assignments from current or former clients in light of Plaintiff's past conduct" and allegations in another lawsuit against Plaintiff's Chairman, Mr. Rieger. (Doc. 140 at 5.) As a result, Defendants state they need to conduct substantial additional discovery "to assess the validity of the assignments Plaintiff has sought to obtain, whether they were obtained freely and fairly from current/former clients with adequate disclosure of the circumstances, whether consideration was given for those assignments, and whether Plaintiff may properly sue on behalf of the client-assignors." (Doc. 140 at 5.) This includes discovery as to whether the client-assignors "purchased bonds in connection with the offering in July 2019, as opposed to in secondary market transactions, and whether Plaintiff has valid assignments for all of them." (Doc. 140 at 6.) Indeed, Defendants have already identified "more than twenty assignments Plaintiff obtained from clients that only purchased bonds in secondary market transactions and therefore could not have relied on Defendants' alleged misrepresentations in connection with the initial offering." (Doc. 140 at 6.) And Defendants have also identified assignments by individuals "who do not appear to have purchased bonds" at all. (Doc. 140 at 6.) In short, Defendants contend that the case must start over, including substantial discovery and another round of motion practice, and "Plaintiff should not be allowed a 'redo' at this stage" considering Plaintiff's wrongdoing in the form of bad faith and dilatory tactics. (Doc. 140 at 7.)

While the Ninth Circuit allowed supplemental pleading to cure the injury-in-fact pleading defects in a similar situation in *Northstar II*, Plaintiff's request to supplement in

the present case differs significantly from that case in that the request here raises substantial *Foman* issues. The Court finds Defendants have demonstrated that Plaintiff engaged at least in dilatory tactics by concealing the lack of a basis for Plaintiff's allegation that it purchased bonds for its own account at the initial issuance, including by providing inadequate and redacted discovery responses. Likewise, Plaintiff engaged in dilatory tactics by waiting until the then-scheduled fact discovery deadline to obtain assignments of claims from its bond-buying clients and to suggest amending the complaint, even though Defendants had long before raised the standing issues under *Huff*, a case the Ninth Circuit acknowledged the district court was applying in *Northstar II* and district courts in the Ninth Circuit have consistently applied in similar circumstances. While Plaintiff argues it did not believe *Huff* applied, it does not adequately substantiate that position. And Defendants have demonstrated undue prejudice in the form of substantial expenditure of their time and treasure to date as well as significant new discovery and motion practice going forward— in short, a "re-do" for Plaintiff at Defendants' expense. While the Court recognizes there is a presumption to allow a plaintiff to supplement the complaint in ordinary circumstances under *Eminence Capital, LLC*, 316 F.3d at 1052, the Court finds the dilatory tactics on the part of Plaintiff and resulting undue prejudice to Defendants rise to such a level in this case that the Court must exercise its discretion to deny Plaintiff's request to supplement the Complaint.

### C.     Motions to Seal

In conjunction with their supplemental brief, Defendants filed a Stipulation (Doc. 135) and Motion (Doc. 139) to Seal to keep certain information confidential. The Court finds the requirements of *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1103 (9th Cir. 2016), are met and therefore will grant the Stipulation and Motion.

**IT IS THEREFORE ORDERED** granting Defendants Aegis Capital Corp. and Municipal Capital Markets Group Inc.'s Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docs. 83, 90 sealed).

**IT IS FURTHER ORDERED** denying Plaintiff's request for leave to file a supplemental pleading (*see* Doc. 109).

**IT IS FURTHER ORDERED** granting the Stipulation for Leave to File Certain Portions of Defendants' Supplemental Brief in Support of Their Rule 12(b)(1) Motion to Dismiss under Seal (Doc. 135). The Clerk of Court is directed to file under seal the documents currently lodged under seal at Doc. 136.

**IT IS FURTHER ORDERED** granting Defendants' Motion to Seal Mistakenly Filed Unredacted Supplemental Brief (Doc. 139). The Clerk of Court is directed to seal the documents at Doc. 137.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this matter.

Dated this 18th day of March, 2024.

_____
Honorable John J. Tuchi
United States District Judge